UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------X
SMILEDIRECTCLUB, LLC,

                Plaintiff,

   - against -

JACQUELINE I. FULOP, D.M.D., P.C.,
and JACQUELINE I. FULOP-GOODLING,

                Defendants.
------------------------------------X

**MEMORANDUM AND ORDER**

19 Civ. 9582 (NRB)

**NAOMI REICE BUCHWALD**
**UNITED STATES DISTRICT JUDGE**

    Jacqueline I. Fulop, D.M.D., P.C. ("Fulop P.C.") and Jacqueline I. Fulop-Goodling ("Fulop-Goodling," and, together with Fulop P.C., "defendants") move to dismiss two of the eight claims in SmileDirectClub, LLC's ("plaintiff") amended complaint. The Court grants defendants' motion for the reasons stated herein.

**BACKGROUND**

    Plaintiff sells transparent mouthpieces called clear aligners that align teeth in lieu of traditional dental braces. See Am. Compl. ¶ 9. To sell its clear aligners, plaintiff operates hundreds of SmileShop retail stores at which customers obtain 3D images of their teeth and gums that plaintiff sends to dental practices with whom it has contracted. See Am. Compl. ¶¶ 9-10. A dentist or orthodontist who is employed by one of those dental practices and licensed in the customer's state of residence then determines whether clear aligner treatment is appropriate for the

1

customer and, if so, prescribes it. See Am. Compl. ¶ 10. Customers who are prescribed clear aligner treatment this way receive Smile Direct Club-branded clear aligners from plaintiff. Am. Compl. ¶ 10.

If a customer cannot visit a SmileShop to obtain 3D images of their teeth, then he or she can purchase an impression kit from plaintiff's website to create maxillary and mandibular molds of their teeth for plaintiff. See Am. Compl. ¶ 10. Plaintiff refers to its SmileShop employees as SmileGuides, and its customers can finance their purchase of its clear aligners using its SmilePay program. Am. Compl. ¶ 11. Plaintiff's clear aligner treatment costs $1,895 -- $2,290 if financed with SmilePay -- and is approximately 60% to 70% cheaper than traditional orthodontic services. Am. Compl. ¶ 22.

Plaintiff has registered or sought to register various marks with the United States Patent and Trademark Office, including "Smile Direct Club," "SmileDirectClub," and "SmileShop." See Am. Compl., Exs. A, B, & C. Plaintiff maintains that it has used "Smile Direct Club," "SmileShop," "SmileGuide," and "SmilePay" (collectively, the "Smile Marks") continuously in commerce for several years. See Am. Compl. ¶¶ 12-14.

Fulop-Goodling is an orthodontist in New York and New Jersey who practices with Fulop P.C., a New York professional corporation of which she is Chief Executive Officer. Am. Compl. ¶¶ 19-20.

2

Defendants offer clear aligner treatment with Invisalign, which is one of plaintiff's competitors. Am. Compl. ¶ 31; see Defs.' Mem. at 2. Whereas plaintiff sells its clear aligners directly to consumers, Invisalign sells its clear aligners through prescribing orthodontists such as Fulop-Goodling.

Fulop-Goodling describes herself as "one of the most prominent providers of Invisalign clear aligners" and "'the face behind Invisalign.'" Defs.' Mem. at 2. According to defendants' website, drjacquiesmiles.com (the "Website"), Fulop-Goodling is a "VIP Plaitnum Invisalign Provider" who "has been recognized as a top [Invisalign] provider every year since 2003." See drjacquiesmiles.com/about-us/meet-our-doctors (last accessed on March 6, 2020).[1] The Website also states that Fulop-Goodling is a spokesperson for Invisalign, and, in that capacity, has appeared on television to promote Invisalign's products. See id.

Plaintiff contends that its direct-to-consumer clear aligner treatment "has disrupted and threatens to further disrupt traditional, higher-cost orthodontic delivery models," including that of defendants. See Am. Compl. ¶ 22. The amended complaint alleges that "[a]s a result of this disruption," defendants made

---

[1] On a motion to dismiss under Rule 12(b)(6), the Court "may take judicial notice of information publicly announced on a party's website, as long as the website's authenticity is not in dispute and it is capable of accurate and ready determination." Wells Fargo Bank, N.A. v. Wrights Mill Holdings, LLC, 127 F.Supp. 3d 156, 167 (S.D.N.Y. 2015) (internal quotation marks omitted).

3

false and misleading statements on the Website in an effort to "convert consumers interested in [plaintiff's] branded clear aligner therapy into customers of the [d]efendants," Am. Compl. ¶ 23, and "divert potential sales of [plaintiff's] goods and services to [defendants]," Am. Compl. ¶ 38.

Specifically, on a part of the Website titled "Smile Direct Club vs. Invisalign," defendants stated that "[o]ne popular alternative to Smile Direct Club is Invisalign" and that "[a] lot of consumers actually prefer [Invisalign] since your progress is supervised by a licensed orthodontist in NY who will . . . help you achieve . . . safe results." Am. Compl., Ex. D at 7 (emphasis deleted). Moreover, on a part of the Website titled "Smile Direct Club and Professional Local Orthodontist in NYC," defendants recited "information [that] will reveal the difference between receiving treatment from Smile Direct Club compared to a local professional orthodontist." Am. Compl., Ex F at 1–2. Among other things, defendants asserted that patients using plaintiff's services "can experience pain, discomfort or have questions about their treatment," that plaintiff's services "can be difficult and even dangerous," and that some patients "have reported they experienced unforeseen pain in the jaw and mouth." Am. Compl., Ex. F at 2, 4. Defendants then stated that "[v]isiting an orthodontist is the best option" because "you want to do [clear aligner treatment] safely," and provided instructions for

4

scheduling an appointment with Fulop-Goodling. Am. Compl., Ex. F at 5.

Based on these allegedly false and misleading statements, as well as numerous uses of the Smile Marks on the Website, plaintiff filed a complaint against defendants, which asserted claims for federal and common law trademark infringement and unfair competition. The complaint also asserted two claims for alleged violations of New York General Business Law ("N.Y. G.B.L.") §§ 349 and 350, respectively. After defendants filed a pre-motion letter noting that the complaint failed to allege any harm to the public beyond consumer confusion, which, as explained below, is required for a competitor to state a claim against a business under §§ 349 and 350, plaintiff amended its complaint to allege that "[d]efendants' false and misleading statements . . . will result in harm to the public interest," that those statements "pose significant harm of misleading or deceiving customers, which is obviously harmful to the public interest," that "[d]efendants' conduct has a deleterious impact on the public health in that consumers truly needing dental treatment may forgo [the] same, out of fear that [plaintiff's] cost-effective solutions are risky or likely to be ineffective," Am. Compl. ¶ 64, and that "consumers for whom other teeth straightening procedures are prohibitively expensive . . . are steered away from [plaintiff's] affordable and

effective treatment options," Am. Compl. ¶ 75. Defendants moved to dismiss plaintiff's claims under §§ 349 and 350.

## DISCUSSION

N.Y. G.B.L. §§ 349 and 350 prohibit "[d]eceptive acts or practices" and "[f]alse advertising," respectively, "in the conduct of any business." These statutes provide a private right of action against businesses that injure them through deceptive acts or false advertising. See, e.g., Bildstein v. MasterCard Int'l Inc., 329 F.Supp. 2d 410, 413 (S.D.N.Y. 2004). To state a claim under either statute, a plaintiff must allege that "(1) the defendant's deceptive acts were directed at consumers; (2) the acts are misleading in a material way; and (3) the plaintiff has been injured as a result." See Maurizio v. Goldsmith, 230 F.3d 518, 521 (2d Cir. 2000); see also New World Sol'ns, Inc. v. NameMedia Inc., No. 11 Civ. 763 (KMK), 2015 WL 8958390, at *25 (S.D.N.Y. Dec. 15, 2015) ("The standard for recovery under [N.Y. G.B.L.] § 350, while specific to false advertising, is otherwise identical to [§] 349.").

Although each statute "is, at its core, a consumer protection device," "corporate competitors" have standing to sue under §§ 349 and 350 "so long as some harm to the public at large is at issue." Securitron Magnalock Corp. v. Schnabolk, 65 F.3d 256, 264 (2d Cir. 1995) (internal quotation marks omitted), cert. denied, 516 U.S. 1114 (1996). However, for a competitor to have standing under §§

6

349 and 350, "the gravamen of the complaint must be consumer injury or harm to the public interest," id., and the complaint "must allege conduct that has significant ramifications for the public at large." Gucci Am., Inc. v. Duty Free Apparel, Ltd., 277 F.Supp. 2d 269, 273-74 (S.D.N.Y. 2003) (internal quotation marks omitted) (collecting cases). Thus, "[c]laims that arise out of a trademark infringement action, and disputes between competitors where the core of the claim is harm to another business as opposed to consumers, both constitute situations [that] courts have found to reflect a public harm that is too insubstantial to satisfy the pleading requirements" of §§ 349 and 350. Id. a 273-74; see also Winner Int'l v. Kryptonite Corp., No. 95 Civ. 247 (KMW), 1996 WL 84476, at *3 (S.D.N.Y. Feb. 27, 1996) ("Courts routinely reject . . . attempts to fashion Section 349 and 350 claims from garden variety disputes between competitors.") (collecting cases).

The gravamen of plaintiff's amended complaint is harm to its business in the form of lost profits, reputation, and goodwill. The amended complaint alleges that plaintiff's direct-to-consumer clear aligner therapy "has disrupted and threatens to further disrupt traditional, higher-cost orthodontic delivery models," including that of defendants. Am. Compl. ¶ 22. "As a result of this disruption," the amended complaint alleges that defendants -- prominent providers of Invisalign, one of plaintiff's competitors -- used the Smile Marks on the Website "to draw

7

attention to their own website" in order to "convert consumers interested in [plaintiff's] branded clear aligner therapy into customers of the [d]efendants." Am. Compl. ¶ 23. They also allegedly disparaged plaintiff's services on the Website in order to "interfere with [plaintiff's] relationships with its customers and potential customers," "deter[] [those customers] from purchasing [plaintiff's] goods and services," Am. Compl. ¶ 32, and, ultimately, "divert potential sales of [plaintiff's] goods and services to [defendants]," Am. Compl. ¶ 38. Moreover, because of this alleged misconduct, defendants allegedly "cause[d] confusion . . . as to the source or origin of [d]efendants' services," Am. Compl. ¶ 37, and "irreparable harm to [plaintiff] and to its valuable reputation and goodwill with the consuming public," Am. Compl. ¶ 39.

The amended complaint's allegations of public harm, which plaintiff added only after defendants noted the original complaint's failure to allege harm to consumers other than confusion, do not alter its gravamen. The allegations that defendants' allegedly false and misleading statements "will result in harm to the public interest," Am. Compl. ¶ 64, "pose significant harm of misleading or deceiving consumers, which is obviously harmful to the public interest," Am. Compl. ¶ 64, and "ha[ve] a deleterious impact on the public health," Am. Compl. ¶ 75, are little more than "'naked assertions' devoid of 'further factual

8

enhancement,'" Iqbal, 556 U.S. at 678 (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 557 (2007)).

Plaintiff's effort to pivot from competitive to public harm fails. The allegation that "consumers truly needing dental treatment may forgo the same[] out of fear that [plaintiff's] cost-effective solutions are risky or likely to be ineffective" is speculative at best. Am. Compl. ¶ 64. The vague assertion that consumers "may forgo" dental treatment cannot confer competitor standing under §§ 349 and 350 because "[t]he mere possibility that consumers in the future" could suffer injury is insufficient to allege public harm. Winner Int'l, 1996 WL 84476, at *3. Moreover, it is overblown to contend that consumers would abstain from dental treatment altogether because of defendants' allegedly false statements about plaintiff's clear aligner services.[2] Dental treatment encompasses far more than clear aligner treatment for malocclusion, and, contrary to discouraging consumers from undergoing clear aligner treatment, defendants' allegedly false statements encourage them to do so, just with defendants instead of plaintiff.

---

[2] This is not an overreading of the allegation; plaintiff actually contends that defendants' false and misleading statements about its clear aligner services would cause consumers to abstain from all dental treatment. See, e.g., Opp. at 2 ("patients may be forced to forego [sic] dental treatment altogether"); Opp. at 4 ("[d]efendants' false and misleading comments have the effect of discouraging consumers from seeking treatment altogether. . . . consumers truly needing dental treatment may forgo same"); Opp. at 9 (defendants' allegedly false statements "caus[e] consumers to forego [sic] dental treatment altogether").

9

Nor does the amended complaint's allegation that "consumers for whom other teeth straightening procedures are prohibitively expensive . . . are steered away from [plaintiff's] affordable and effective treatment options" plausibly allege harm to the public at large. The amended complaint does not allege that, in the absence of plaintiff's services, those consumers are without similarly priced clear aligner treatment for malocclusion. Nor could it as a brief Internet search indicates that at least two other companies use the same direct-to-consumer business model as plaintiff in order to sell clear aligner treatment nationally, one for $505 more than plaintiff, see candidco.com/pricing (last accessed on March 16, 2020), and one for $400 less, see smilelove.com/pages/pricing (last accessed on March 16, 2020).[3] Plaintiffs do not allege that the services of those "rival[s] . . . [are] unsafe or cause[] injuries," Romeo & Juliette Laser Hair Removal, Inc. v. Assara I LLC, 08 Civ. 442 (TPG) (FM), 2014 WL 4723299, at *5 (S.D.N.Y. Sept. 23, 2014), or otherwise explain why failing to use plaintiff's teeth straightening treatment has "significant ramifications for the public at large," Gucci Am., Inc., 277 F.Supp. 2d at 273-74. The allegation is consequently inadequate as courts considering the public harm requirement distinguish conduct that endangers consumers from conduct that

---

[3] The option that costs $505 more includes "remote monitoring by an orthodontist." candidco.com/pricing (last accessed on March 16, 2020).

10

merely encourages them to purchase a product from a different business or an inferior product. Conopco Inc. v. Wells Enter., Inc., No. 14 Civ. 2223 (NRB), 2015 WL 2330115, at *6 (S.D.N.Y. May 14, 2015) (collecting cases).

While the allegations in the amended complaint individually fail to allege significant ramifications for the public at large, they fare no better collectively. As the Second Circuit has recognized in numerous contexts, "[z]ero plus zero is zero." Tepperwien v. Entergy Nuclear Ops., Inc., 663 F.3d 556, 572 (2d Cir. 2011) (internal quotation marks omitted).

Finally, the cases on which plaintiff relies are materially distinguishable. Defendants did not "g[ive] false information [to] . . . a regulatory agency primarily concerned with the safety of the public," thus "caus[ing] the [agency] to undertake unnecessary investigations and interfer[ing] with its decisionmaking process[.]" Securitron, 65 F.3d at 264. Nor did they advertise that a product conferred certain health benefits when their clinical trials of the product demonstrated otherwise. See Fed. Trade Comm'n v. Quincy Bioscience Holding Co., Inc., 753 F. App'x 87, 88 (2d Cir. 2019) (summary order). Defendants also have not misrepresented the price of their services in order to defraud Medicare recipients into paying more for them. See People v. Pharmacia Corp., 895 N.Y.S.2d 682 (N.Y. Sup. Ct. 2010). More generally, in contrast to certain cases that plaintiff cites, the

allegedly false and misleading statements on which plaintiff bases its §§ 349 and 350 claims warn consumers about, rather than conceal from consumers, the potential dangers of a product or treatment.

The Court accordingly finds that the amended complaint fails to "allege conduct that has significant ramifications for the public at large," Gucci Am., Inc., 277 F.Supp. 2d at 273-74, and the gravamen of the amended complaint is injury to plaintiff's business. Plaintiff therefore lacks standing to sue defendants as a competitor under §§ 349 and 350.

## CONCLUSION

The Court grants defendants' motion to dismiss and dismisses plaintiff's claims under N.Y. G.B.L. §§ 349 and 350 with prejudice. The parties shall submit a proposed discovery schedule within 14 days of the docketing of this Memorandum and Order. The Clerk of Court is respectfully directed to terminate the motion pending at docket entry 17.

**SO ORDERED.**

Dated: New York, New York
March *19*, 2020

NAOMI REICE BUCHWALD
UNITED STATES DISTRICT JUDGE